UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRANCE KIMBROUGH | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-1006 |
| | ) | (Cr. Nos. 3:15-cr-00147-7; |
| UNITED STATES OF AMERICA | ) | 3:16-cr-00142-3) |

## MEMORANDUM OPINION

Terrance Kimbrough has filed a Motion and Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Doc. Nos. 1, 19). The Government has filed a response in opposition. (Doc. No. 27). An optional reply has not been filed. For the reasons that follow, Kimbrough's motion will be denied.

### I. Background

Kimbrough and his cohorts wreaked havoc in and around the J.C. Napier and Tony Sudekum housing developments from at least late 2014, until his arrest on September 13, 2016. He was charged in two federal cases: 3:15-cr-00147 ("the 2015 case"); and 3:16-cr-00142 ("the 2016 case").

In the 2015 case, Kimbrough, along with Darryl Starks,[1] was charged in Counts Six and Seven of the Second Superseding Indictment. Both Counts alleged that Kimbrough, while the user of a controlled substance, unlawfully possessed either ammunition or a firearm.

More specifically, the events underlying Count Six occurred on July 4, 2015. On that day, Kimbrough and Darryl Starks went to the Panorama Apartments in Nashville, Tennessee. There, Kimbrough shot a rival gang member in the leg, requiring that he be hospitalized for several days. Additionally, some of Kimbrough's errant shots struck occupied residences.

---

[1] Because there were three Starks in the 2015 case – cousins and a mother/aunt – the Court refers to them by their full names, instead of surname.

Count Seven arose from events that occurred on July 17, 2015. On that day, Kimbrough, armed with a Mossberg 12-gauge shotgun, and Darryl Starks, armed with a rifle, engaged in a shootout with a couple of individuals at the J.C. Napier homes that resulted in two women being struck by gunfire. This event followed on the heels of an altercation Darryl Starks had earlier in the day during which a woman, holding a young child, was shot in the head, causing life-threatening injuries.

In the 2016 case, Kimbrough was charged in all but one of the seventeen counts in the Second Superseding Indictment. He ultimately pled guilty to Counts Two, Four, Nine, Fourteen, and Seventeen, a summary of which is as follows:

Count Two charged a Hobbs Act Robbery in violation of 18 U.S.C. § 1951. Specifically, sometime around November 10, 2014, Kimbrough and Ricky Watkins walked up to "Papy" and "Face," who were allegedly rival drug dealers from the 3rd Avenue area of Nashville, and ordered them to strip down while Kimbrough pointed a Sig Sauer .45 at them. Kimbrough and Watkins made off with drug proceeds and distribution amounts of powder and crack cocaine.

Count Four alleged an Attempted Hobbs Act Robbery, also in violation of 18 U.S.C. § 1951. On November 16, 2014, Kimbrough was riding with Deshawn Burleson in the J.C. Napier area when he saw "Maxi." Believing "Maxi" to be a cocaine dealer, Kimbrough grabbed Burleson's Smith & Wesson 9mm semi-automatic, jumped out of the car, and approached "Maxi." After Kimbrough made robbery demands, "Maxi" took off running, but was hit in the buttocks from one of the shots fired by Kimbrough. "Maxi" continued to run but, when attempting to hurtle a fence, tore open his scrotum. Still, "Maxi" continued to run and Kimbrough continued to fire until a woman came out of her residence, at which point Kimbrough fled. The woman took "Maxi" to the hospital where he

2

was treated for multiple gunshot wounds and his other injury.

Count Nine alleged the use of a firearm in relation to an Attempted Hobbs Act Robbery some ten days later. On November 26, 2014, Kimbrough and Calvin Starks, agreed to rob Brendon Leggs, another person Kimbrough believed to be a drug dealer. Around 7:45 that evening, Leggs came out of a market on Lewis street that sits across from J. C. Napier. After Leggs got into his car, Kimbrough and Calvin Starks approached the vehicle on both sides and began speaking to Leggs through the open windows. When Leggs tried to drive off, the two opened fire with semi-automatic pistols and then fled the scene. Leggs drove a short distance, got out of his car, collapsed on the street, and died from the gunshot wounds.

Count Fourteen is related to Count Nine and alleged the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(j) that resulted in death of Monte Watson, a witness to the Leggs murder. Believing that Watson was a snitch, and fearful that he would report the shooting, Kimbrough and Calvin Starks went looking for Watson on December 1, 2014, but were unsuccessful in finding him. Two days later, after Calvin Starks had been arrested on state charges relating to yet another murder, Watson was located near Lewis and Robertson Streets, just outside J. C. Napier, and was shot and killed by Kimbrough and Antonio Eddings.

Count Seventeen is another possession of ammunition by a user or addict charge in violation of 18 U.S.C. 922(g)(3). This occurred on February 23, 2015, when Kimbrough fired several shots into the engine compartment of a car that was then occupied by "Kiki" and Eddings.

To globally settle the 2015 and 2016 cases, Kimbrough agreed to pled guilty to the foregoing charges in exchange for a sentence of 480 months to 520 months, to be followed by five years of supervised release. The agreement was made pursuant to Federal Rule of Criminal Procedure

3

11(c)(1)(C). The Court accepted the plea, and Kimbrough was sentenced to 504 months imprisonment on March 4, 2019. No direct appeal was filed.

## II. Legal Analysis

Though hardly models of clarity, Kimbrough's Motion and Amended Motion appear to raise four grounds for relief. First, he claims that his plea was not knowing and voluntary, apparently because of an allegedly insufficient plea colloquy. Second, he claims counsel was ineffective for failing to challenge certain convictions that subjected him to enhanced penalties under the Guidelines. Third, he argues that counsel was ineffective in failing to assert that attempted Hobbs Act Robbery is not a crime of violence for purposes of an enhanced penalty. Finally, he appears to argue that his convictions for possessing firearms while a drug addict must be vacated. Because Kimbrough did not directly appeal his convictions or sentence, however, he has procedurally defaulted on those claims, and they can be considered now only if Kimbrough "can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent[.]" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted). Before addressing these claims and issues, the Court considers the Government's argument that the waiver of appellate rights in Kimbrough's plea agreement bars all but his ineffective assistance of counsel claims.

**A. Waiver**

"It is well settled that a defendant in a criminal case may waive any right . . . by means of a plea agreement." United States v. Calderon, 388 F.3d 197, 199 (6th Cir. 2004) (quoting United States v. Fleming, 239 F.3d 761, 763–64 (6th Cir. 2001)). This of course "includes the right to appeal," United States v. Melvin, 557 F. App'x 390, 393 (6th Cir. 2013), as well as the right to mount a collateral attack, under Section 2255, Davila v. United States, 258 F.3d 448, 450 (6th Cir.

4

2001). "A waiver provision is binding and forecloses appellate [or collateral] review if (1) the defendant's claim falls within the scope of the appeal waiver provision; and (2) the defendant 'knowingly and voluntarily' agreed to the plea agreement and waiver." United States v. Milliron, No. 19-3720, 2021 WL 79798, at *2 (6th Cir. Jan. 11, 2021) (citing United States v. Toth, 668 F.3d 374, 377–78 (6th Cir. 2012)).

Kimbrough's plea agreement contained a provision titled "Waiver of Appellate Rights." In its entirety, the provision reads:

> Regarding the issue of guilt, defendant hereby waives all (I) rights to appeal any issue bearing on the determination of whether he is guilty of the crime(s) to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence that includes a total term of 480 to 520 months imprisonment and five years of supervised release as agreed upon herein pursuant to Fed. R. Crim. P. 11(c)(1)(C) under the conditions stated above. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence that includes a total term of 480 to 520 months imprisonment and five years of supervised release under the conditions stated above.

(Doc. No. 410 at 16). This language is the same commonly used in this district.

Recently, in a case involving Kimbrough's co-defendants Calvin Starks, the Court addressed the effect of this language on a motion seeking collateral review. In Starks v. United States, No. 3:15-CR-00147-5, 2021 WL 351995, at *4–5 (M.D. Tenn. Feb. 2, 2021), the Court found that the waiver "only precludes collateral attacks on sentences," not convictions or, "[a]t the very minimum, the waiver provision is ambiguous" because "[i]t distinguishes between convictions and sentences

5

clearly suggesting there is a difference." For the reasons stated in detail in Starks, the Court finds that the "Wavier of Appellate Rights" provision in Kimbrough's Plea Agreement does not bar his present motion to vacate or correct sentence. See also In re Brooks, No. 19-6189, 2020 U.S. App. LEXIS 6371 (6th Cir. Feb. 28, 2020); Hall v. United States, Case No. 3:20-cr-00646, Doc. No. 9 at 6-9, 2021 WL 119638 (M.D. Tenn, Jan. 21, 2021); Lee v. United States, No. 3:19-cv-00850, 2020 WL 7425862, at *6 (M.D. Tenn. Dec. 18, 2020); United States v. Serrano, No. 3:19-CV-00719, 2020 WL 5653478, at *12 (M.D. Tenn. Sept. 23, 2020).

**B. Knowing and Voluntary Plea**

Rule 11 requires that a defendant be placed under oath, addressed personally in open court, and apprised of certain specific things, including "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(g). This "is integrally related to 11(b)(3)'s requirement that the district court determine that the plea has a factual basis." United States v. Valdez, 362 F.3d 903, 909 (6th Cir. 2004). "'[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.'" Id. (quoting McCarthy v. United States, 394 U.S. 459, 466 (1969)).

How this Court allegedly violated Rule 11 is not clear, nor has Kimbrough shown cause or prejudice for failing to raise this issue on direct appeal. All he says in his Amended Motion is that "the statutory elements of the charges were not fully set forth prior to the entry of his guilty plea, depriving him of the opportunity to understand the critical elements of the plea agreement and fully understand the nature and severity of the charges prior to his plea." (Doc. No. 19 at 2). Such cursory arguments are insufficient to serve as a basis for relief. See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("The subsequent presentation of conclusory allegations unsupported by specifics is subject

6

to summary dismissal, as are contentions that in the face of the record are wholly incredible."); Rogers v. United States, 561 F. App'x 440, 443 (6th Cir. 2014) (stating that in collateral proceedings under Section 2255, a court may disregard allegations that "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

Regardless, Kimbrough's suggestion that the elements of the crimes to which he pled guilty were not explained to him and/or that he did not understand the elements and consequences of his plea are entirely belied by the record. The transcript of the plea hearing held in both cases on August 20, 2018 shows that the Court meticulously explained the elements and the possible penalties for each crime. (Case No. 3:16-cr-124, Doc. No. 528, Tr. at 5-10). It also reflects that Kimbrough understood the elements and penalties, and had no questions about them, as evidenced by the following colloquy:

> [THE COURT]: Now, Mr. Kimbrough, do you have any questions about any of the counts you're offering to plead guilty to?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Okay. And you've talked to your attorneys about each one of those?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And asked them questions?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And they've answered the questions that you understood – they answered in away that you understood?
>
> THE DEFENDANT: Yes, sir.
>
>     *        *        *
>
> THE COURT: Okay. That's all right. That's fine. My question is – I need to know,

7

> did you, and you alone, you and nobody else, you, Mr. Kimbrough, and only Mr. Kimbrough, make the final decision to enter a plea of guilty to each of these counts?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you did that after talking to your attorneys?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you decided that's the best interest of you –
>
> THE DEFENDANT: Yes, sir.

(Id. at 12).

The record conclusively proves that Kimbrough was informed of the elements and possible penalties and that he understood the same. Thus, there is no basis for a claim that his plea was not knowing and voluntary.

## C. Ineffective Assistance of Counsel

"[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). "Defendants claiming ineffective assistance must establish two things. First, that the attorney's performance fell below "prevailing professional norms. And second, that the attorney's poor performance prejudiced the defendant's case." Monea v. United States, 914 F.3d 414, 419 (6th Cir. 2019) (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)). "Proving prejudice is not easy" because the petitioner is confronted with the "high burden" of demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. (citing Davis v. Lafler, 658 F.3d 525, 536 (6th Cir. 2011)). "To show prejudice in the guilty-plea context, a defendant 'must show

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and instead would have insisted on going to trial.'" Hodges v. Colson, 727 F.3d 517, 534 (6th Cir. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Kimbrough has not made the requisite showing with regard to either of his ineffective assistance of counsel claims.

### 1. *Failure to Challenge Prior Convictions*

In his Amended Motion, Kimbrough alleges "he was denied effective counsel when counsel failed to dispute the characterization of his prior offenses as violent or serious drug offenses for enhancement purposes." (Doc. No. 19 at 2). Again, this vague and conclusory argument containing no facts fails to state a claim. Without identifying which prior conviction(s) should have been challenged or the reasons for any such challenge, the Court cannot say counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). Nor can the court find that counsel's alleged failure to object was "objectively unreasonable under prevailing professional norms." Hodges, 527 F.3d at 534. This is particularly true because according to the Presentence Report, counsel did object to one criminal conviction that scored a criminal history point under the Guidelines, but the probation officer concluded the objection was not well-taken and, in any event, had "no impact on the criminal history score or guideline range." (PSR dated January 16, 2019, Addendum at 7).

### 2. *Failure to Challenge Attempted Hobbs Act Robbery Charge*

In Count Nine, Kimbrough and Calvin Starks were charged with using, carrying and discharging a firearm during and in relation to a crime of violence, specifically the attempted armed robbery of Leggs. Kimbrough claims that counsel was ineffective in failing to argue that Attempted

9

Hobbs Act Robbery is not a crime of violence.

In United States v. Davis, 139 S. Ct. 2319, 2336 (2019), the Supreme Court found the residual clause of Section 924(c)(3)(A) to be unconstitutionally vague. Without the residual clause, this begs the question of whether Attempted Hobbs Act Robbery has "as an element the use, attempted use, or threatened use of physical force against the person or property of another" under Section 924(c)(3)(B). Thus far, the Sixth Circuit has not answered that question. See United States v. Sherrill, 972 F.3d 752, 768 (6th Cir. 2020) ("We have yet to address whether attempt to commit Hobbs Act robbery qualifies as a crime of violence under 18 U.S.C. § 924(c)'s elements clause, and we decline to do so here."). Other circuits have split on the issue. Compare United States v. Dominguez, 954 F.3d 1251, 1255 (9th Cir. 2020) and United States v. Ingram, 947 F.3d 1021, 1026 (7th Cir. 2020) (both finding that Attempted Hobbs Act Robbery is a crime of violence under the elements clause) with United States v. Taylor, 979 F.3d 203, 207–08 (4th Cir. 2020) (finding that Attempted Hobbs Act Robbery is not categorically a crime of violence).

Recently, the Court addressed this question in the very context presented here: the Attempted Hobbs Act Robbery and shooting of Brandon Leggs. After canvassing the law, and recognizing that "what Starks and Kimbrough did to Leggs was violent by any definition," the Court ultimately agreed with the Fourth Circuit in Taylor that Attempted Hobbs Act Robbery was not categorically a crime of violence. Starks, 2021 WL 351995, at *8. To that discussion, which is incorporated herein by reference, the Court simply adds the following observation:

> Examining the 924(c) convictions requires an appreciation that, as a society, we do not punish thoughts – no matter how nefarious or lurid – as crimes. Every criminal statute requires an act before a defendant may be convicted.
>
> To commit Attempted Hobbs Act Robbery, a defendant need not perfect the robbery,

10

> but she must take a "substantial step" toward the completion of the offense. Not every step involved in planning or executing a robbery is a violent one. But some of these non-violent, preliminary steps qualify as a substantial step, establishing the minimum conduct needed to sustain a conviction for Attempted Hobbs Act Robbery. Therefore, since the government is never obligated to prove that the defendant's conduct – not thoughts – manifested the use, attempted use, or threatened use of physical force, Attempted Hobbs Act Robbery is not a crime of violence as defined in 18 U.S.C. § 924 and cannot serve as a predicate for a conviction under that statute.

Celaj v. United States, No. 1:13-CV-1290 (ALC), 2021 WL 323303, at *1 (S.D.N.Y. Feb. 1, 2021).

The conclusion in Starks, which the Court continues to follow, means that Kimbrough is factually innocent of the charges in Count Nine. See, Phillips v. United States, 734 F.3d 573, 582 (6th Cir. 2013) ("One way to establish factual innocence is to show an intervening change in the law that establishes the petitioner's actual innocence."). This does not mean that Kimbrough is entitled to relief, however.

In Bousely, 523 U.S. at 624, the Supreme Court held that "in cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." This rule has been extended to crimes that are equally as serious as to the one that is vacated. See United States v. Caso, 723 F.3d 215, 222 (D.C. Cir. 2013) (stating that "the likely rationale for the Bousley rule supports requiring petitioners to show their innocence of equally serious charges"); Lewis v. Peterson, 329 F.3d 934, 937 (7th Cir. 2003) ("The logic of the Bousley opinion does not require that the charge that was dropped or forgone in the plea negotiations be more serious than the charge to which the petitioner pleaded guilty. It is enough that it is as serious.").

Here, Kimbrough faced a potential life sentence on Count Nine. He also, however, faced a potential life sentence for murdering Monte Watson in an effort to prevent him from testifying as

alleged in Count Thirteen. The Government dropped that charge as a part of the plea agreement. The Government also agreed to drop Counts Three, Five, and Twelve, each of which carried a mandatory consecutive sentence of seven years, and up to life imprisonment. Kimbrough has not even claimed, let alone attempted to show, that he is actually innocent of any of those charges. Nor has he even suggested that he would have insisted on going to trial had counsel successfully challenged the Attempted Hobbs Act Robbery charge and the other dropped-charges were again placed on the table.

**D.** *Rehaif*-**Claim**

Kimbrough argues that "he did not possess the requisite knowledge to 'knowingly violate' 18 U.S.C. § Section 922(g) and the Government failed to establish that Kimbrough knew he violated the material elements of Section 922(g)." (Doc. No. 19 at 3). This is presumably in reference to Counts Six and Seven in the 2015 case and Count Seventeen in the 2016 case, each of which alleged possession of a firearm/ammunition by a drug user. Kimbrough has established neither cause or prejudice for failing to raise this issue on direct appeal.

In Rehaif v. United States, 139 S.Ct. 2191, 2194 (2019), the Supreme Court held that "the word 'knowingly' [in Section 922(g)] applies both to the defendant's conduct and to the defendant's status" as a prohibited person. That is, the Government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it," id., such as being a convicted felon or drug addict.

Even though Rehaif may have definitively established the law, Kimbrough cannot show cause for failing to raise the issue on appeal because the question of whether a defendant must have had knowledge of his prohibited status as an element of the charge has been "percolating in the courts for years." United States v. Bryant, No. 11-CR-765, 2020 WL 353424, at *3 (E.D.N.Y. Jan.

12

21, 2020). Indeed, "[b]efore the Supreme Court's decision in Rehaif, the Court of Appeals for the Sixth Circuit repeatedly stated that, to prove a violation of § 922(g), the Government [only] had to show that the defendant 'had' a prior felony conviction and that he 'knowingly' possessed a firearm." United States v. Wilson, No. 1:17-CR-60, 2019 WL 6606340, at *5 (W.D. Mich. Dec. 5, 2019) (collecting cases dating back to 2010). The fact that this authority was against Kimbrough's position does not excuse his default. See Bousley, 523 U.S. at 623 (rejecting the argument that adverse circuit precedent could excuse procedural default and explaining that "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time"); Gatewood v. United States, 979 F.3d 391, 395–96 (6th Cir. 2020) (observing that, in light of Bousley and other precedent, "'futility cannot be cause,' at least where the source of the 'perceived futility' is adverse state or lower court precedent").

Even if Kimbrough could establish cause for his procedural default because of adverse circuit precedent, he cannot show prejudice. Kimbrough declined to speak with the probation officer about his drug use during the presentence interview. Nevertheless, he entered into an agreed statement of facts as a part of his plea agreement. There, Kimbrough agreed that, for the entire time period covered by the two Indictments, he "was a regular and unlawful user of controlled substances," and that "[h]e was a daily user of controlled substances, including marijuana, Lortabs, and other controlled substances, including a controlled substance generally known by its street name 'Molly.'" (Case No. 3:16-cr-142-3, Doc. No. 410 at 20). Moreover, during the change of plea colloquy Kimbrough, while under oath, answered "yes" to the question, "Are you telling the Court that the Court can absolutely rely upon the factual information in this agreed facts?" (Id., Doc. No. 510 at 17).

13

Because Kimbrough cannot show cause and prejudice for his default, or actual innocence of the crimes alleged in Counts Six and Seven of the 2015 case and Count Seventeen in the 2016 case, his Rehaif-based claims fail.

### III. Conclusion

For the foregoing reasons, Kimbrough's Motion and Amended Motion to Vacate, Set Aside, or Correct Sentence in Accordance With 28 U.S.C. § 2255 will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE